```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

 4   BAYER INTELLECTUAL PROPERTY        )   Civil Action
     GMBH and BAYER PHARMA AG,          )
 5                                      )
              Plaintiffs,               )
 6                                      )
         v.                             )
 7                                      )
     WARNER CHILCOTT COMPANY,           )
 8   LLC, WARNER CHILCOTT (US),         )
     LLC, and WARNER CHILCOTT PLC,      )
 9                                      )
              Defendants.               )   No. 12-1032-GMS
10
                                - - -
11
                         Wilmington, Delaware
12                     Friday, October 31, 2014
                              11:40 a.m.
13                       Telephone Conference

14                            - - -

15   BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

16   APPEARANCES:

17          RICHARD D. KIRK, ESQ.
            Bayard, P.A.
18                  -and-
            MATTHEW R. FORD, ESQ. (and other counsel)
19          Bartlit Beck Herman Palenchar & Scott LLP
            (Chicago, IL)
20
                          Counsel for Plaintiffs
21
            STEVEN J. BALICK, ESQ.
22          Ashby & Geddes
                    -and-
23          ERIC R. SONNENSCHEIN, ESQ.
            Covington & Burling LLP
24          (Washington, D.C.)

25                        Counsel for Defendants
```

1           THE COURT:  Good morning, counsel.  Who is
2    appearing for Bayer today?
3           MR. KIRK:  Good morning, Your Honor.  Dirk Kirk
4    from Bayer.  I am joined by my colleagues at Bartlit Beck
5    Herman Palenchar & Scott.  Of those, Matthew Ford will be
6    our principal spokesperson.
7           THE COURT:  To the extent that there is going to
8    be any speaking other than me, okay, that is fine.
9           On the other side?
10          MR. BALICK:  Your Honor, good morning.  Steven
11   Balick from Ashby & Geddes.  And I am joined by Eric
12   Sonnenschein from Covington & Burling.
13          THE COURT:  Good morning.
14          Counsel, I am not sure that Nautilus stands for
15   the propositions that either one of you assert.  But so be
16   it.
17          It strikes me that it is often the case that
18   colleagues of mine around the country who do a fair amount,
19   and even those who don't, of patent work entertain the
20   question of indefiniteness at the time of claim construction
21   and make rulings in that regard.  It's not my practice to do
22   that.  It has been my practice to handle that in the context
23   of summary judgment.
24          That said, it seems to me that this matter is
25   ripe for the filing of motions, or as suggested, the entry

1    of judgment and appeal.  I am certainly not going to prevent
2    or prohibit Bayer from making an argument regarding
3    indefiniteness that they didn't get a chance to make at the
4    Markman proceeding.  But I don't see the need for any
5    further testimony or discovery of an opinion type in this
6    case.  The Nautilus Court, I think a pretty subtle opinion,
7    in terms of its addressing the standard with which it wasn't
8    so enamored that was being applied by the Federal Circuit,
9    but it does not tell District Judges that we must or must
10   not handle, in terms of process, the inquiry that we are
11   required to make in trying to determine the scope of the
12   claims of a patent.
13              I have and have been at liberty to take and
14   consider all kinds of extrinsic evidence.  It's determined
15   by any individual judge who is empowered to do that, it
16   seems to me, by the previous decisions of the Federal
17   Circuit, as well as the Supreme Court, if that judge
18   determines it prudent to do so, for a variety of reasons.
19              I think I have made it pretty clear in my order
20   that in spite of having the benefit of the thoughts of those
21   of skill that I have been unable to construe certain of the
22   terms in the patent.
23              I really don't see the benefit of further
24   inquiry in the nature of expert opinion.
25              I will allow a brief opportunity for you to try

```
 1    to disabuse me of that notion, but a very brief one,
 2    counsel.
 3                MR. FORD:  Yes, Your Honor.
 4                I think, to be very brief, the first would be
 5    that expert testimony would provide the perspective of a
 6    person of ordinary skill in the art at the time of the
 7    patent application.
 8                THE COURT:  Isn't it still the case that, and
 9    the Court didn't address this, the Supreme Court, isn't it
10    still the case that Vitronics is viable law?
11                MR. FORD:  I am sorry, Your Honor?
12                THE COURT:  Has Vitronics been overruled?
13                MR. FORD:  No, Your Honor.
14                THE COURT:  So patents, as we know, are drawn to
15    one of skill.  Right?  They are not drawn to you or me or
16    any other individual other than the person of skill in the
17    art.  Right?
18                MR. FORD:  That's right, Your Honor.
19                THE COURT:  And the person of skill in the art,
20    when sitting down and reading a patent, trying to determine
21    how to design around or not infringe, doesn't have the
22    benefit of an expert declaration or transcript of some very
23    well-educated and experienced expert sitting down and
24    opining on the meaning of a particular claim, the
25    specification, the pros. history and those things that
```

1     experts look at in order to determine those things, in order

2     to move and advance the progress of science and the useful

3     arts.  Right?

4                   MR. FORD:  I agree, Your Honor.

5                   THE COURT:  So, then, the patent is supposed to

6     have a public notice function, and I don't think that the

7     justices said anything to undermined that concept, and they

8     couldn't, because then they would be stepping out, way

9     outside of their authority in terms of the separation of

10    powers in our country.  So I am just at a loss as to what it

11    is you are trying to suggest I must do, or, further, must do

12    further to construe these claims.

13                  MR. FORD:  Yes, Your Honor.  I obviously agree

14    with your points.

15                  I think where expert testimony would be helpful

16    is going back to the first part of your questions there,

17    which was that a person of ordinary skill in the art would

18    sit down with the patent to determine whether there is a

19    reasonably certain meaning.  Here, what we have not had --

20    and I understand that a person wouldn't have the benefit of

21    a very skilled expert when looking at the patent -- but that

22    person would be a person of ordinary skill in the art.

23                  What the evidence that we would intend to submit

24    as part of expert discovery here would be that understanding

25    of a person of ordinary skill in the art, which, while

1  looking at the patent itself, looking at the specification
2  and the prosecution history, has not been presented as part
3  of the case to date.
4              THE COURT:  Counsel on the other side, briefly.
5              MR. SONNENSCHEIN:  Well, I think all Your Honor
6  needs to do is look at the Markman hearing transcript, Pages
7  15 through 17 and 26 through 27.  And you will see that Mr.
8  Ford, counsel for Bayer, told Your Honor the exact opposite
9  of what he is now arguing.  He told Your Honor at the
10 Markman hearing, when Your Honor asked about the role of
11 expert testimony in evaluating the meaning of these claim
12 terms, whether that had a role.  And opposing counsel for
13 Bayer told Your Honor it wasn't important.
14             We agree with your other point.  A person
15 sitting down at the time of the invention would not be able
16 to go out and get an expert.  It's all too easy for someone
17 20 years later to go out and hire an expert and say that
18 these terms had a known meaning to create a fact issue when
19 the question is what the meaning of these claim terms is.
20 It is a legal determination and it is one that would have
21 been made at the time of the invention.
22             THE COURT:  Counsel, obviously, you have picked
23 up on -- it is a softball for you.  That's okay.
24             But counsel for Bayer, I am not persuaded by
25 your points in the letter and/or today, albeit brief.

1                I will permit the parties to engage in briefing,
2      if you so choose.  I think the more economic route to
3      resolution of this, as to whether Sleet is right or wrong on
4      this, is to accept the entry of judgment and take it up.
5      What's the matter with that?  It saves your client some
6      money, at least theoretically, potentially.
7                MR. FORD:  Your Honor, it certainly is a
8      proposal I will give to our client.  I understand what you
9      are saying.
10               THE COURT:  Okay.  So, counsel, when would you
11     like to report back to me on your preference?
12               MR. FORD:  You are referring to me?
13               THE COURT:  I am.
14               MR. FORD:  Is one week too long?
15               THE COURT:  No.  Unless the other side objects
16     and tells me --
17               MR. SONNENSCHEIN:  No objection.
18               THE COURT:  All right.  Why don't you build into
19     that -- let's make it two weeks.  Why don't you build into
20     that some time -- I know everybody is busy.  This isn't the
21     only case counsel on the line has.  Why don't you build into
22     that an opportunity to talk to one another, regardless of
23     whether you want to enter a stipulation for briefing or the
24     entry of judgment, and report back to me on your efforts and
25     the results of those conversations two weeks from today,

1      which would be November 14.  Okay?
2               MR. FORD:  Thank you, Your Honor.
3               THE COURT:  Anything else, counsel?
4               MR. BALICK:  Your Honor, a quick question.  What
5      is the manner you would prefer that we report back to you?
6      Would you like a letter, or just a stipulation that lays it
7      out either way?
8               THE COURT:  I think a stipulation would be best,
9      Mr. Balick.  That's a good point.
10              MR. BALICK:  Certainly.  Thank you.
11              THE COURT:  Anybody else have anything else?
12              All right, counsel.  Have a good weekend.  Take
13     care.
14              (Conference concluded at 11:52 a.m.)
15                          - - -
16     Reporter:  Kevin Maurer
17
18
19
20
21
22
23
24
25